NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 25, 2018
Decided November 20, 2018

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-1516

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *Plaintiff,* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | |
| FIRST CHOICE MANAGEMENT SERVICES, INCORPORATED and GARY VAN WAEYENBERGHE, *Defendants,* | No. 3:00-cv-00446-RLM-MGG |
| | Robert L. Miller, Jr., *Judge.* |
| JOSEPH D. BRADLEY, *Appellant,* | |
| *v.* | |
| ALCO OIL & GAS COMPANY LLC and RAILROAD COMMISSION OF THE STATE OF TEXAS, *Appellees.* | |

**ORDER**

This case began in 2000 when the SEC charged First Choice Management Services, Inc. and Gary Van Waeyenberghe with fraud in violation of the federal securities laws. The district court appointed a receiver, Joseph Bradley, to locate, collect, and distribute the defendants' assets among the victims of the $31 million fraud. Eighteen years later, the receivership is close to wrapping up. As one of the final steps, Bradley asked the Texas Railroad Commission, a state regulatory body not otherwise involved in these proceedings, to return a $250,000 bond that may have been paid with funds from defrauded investors. When the Commission declined to return the bond, Bradley applied to the district court for an order holding the Commission in contempt and requiring the bond's return. The court denied Bradley's motion because the Commission had not violated a clear command of the court. We affirm.

I.

In 2000, the SEC initiated a civil action against First Choice Management Services, Inc. and Gary Van Waeyenberghe for defrauding investors. Joseph Bradley, the court-appointed receiver, set about marshaling the assets involved in that fraud and discovered that some had been used to acquire oil and gas leases in Texas. At Bradley's request, the district court entered a freeze and turnover order to preserve the assets that may have been connected to the fraud, including assets related to those leases.

In 2006, however, the court lifted a portion of the asset freeze so that those leases could be operated for the benefit of the defrauded investors by ALCO Oil & Gas Co. In order to operate the leases, ALCO had to post a $250,000 cash bond with the Texas Railroad Commission, the state agency charged with overseeing oil and gas production activities in Texas. The Commission requires anyone operating a lease to file financial assurance so that the Commission is guaranteed at least some recovery if the operator violates regulations or causes environmental damage.

In 2008, the Commission informed ALCO of two judgments rendered against it in Commission enforcement proceedings. In one, the Commission determined that several wells operated by ALCO had not been properly plugged, rendering the surrounding groundwater susceptible to saltwater and oil discharges. In the other, the Commission determined that ALCO had failed to complete certain administrative tasks, such as the statutory requirement that it file an organizational report. When ALCO failed to address these problems, the

Commission informed ALCO that it was transferring the $250,000 bond to the Oilfield Cleanup Fund, an account in the general revenue fund of the state treasury. ALCO contested neither the findings against it nor the transfer of the deposit. The Commission reports that it spent more than $542,000 to plug the wells and remedy the damage that they caused.

Bradley believed that the bond comprised funds from defrauded investors, and in 2016, he sought its return. When the Commission refused to return it, Bradley asked the district court to hold the Commission in contempt for failing to return the bond.

The district court denied Bradley's motion. It pointed to several factors that it considered in making its decision: ALCO's regulatory responsibility to supply the bond, maintain the wells, and avoid the damage that the Commission was forced to remediate; the Commission's willingness to refund the bond if it receives payment for ALCO's violations and reimbursement for the environmental repair it conducted; and the state law obstacles that the Commission would face in trying to extract the bond from the state treasury.

## II.

We review a district court's decision on a contempt petition for abuse of discretion. *Prima Tek II, LLC. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541–42 (7th Cir. 2008). To succeed on his petition, Bradley needed to establish by clear and convincing evidence that (1) there was an unambiguous command from the court; (2) the Commission violated that command; (3) the violation was significant, meaning the Commission did not substantially comply; and (4) the Commission failed to take steps to reasonably and diligently comply with the command. *Id.* And when the meaning of a district court's command is disputed, "broad deference [is] given to a district court in its interpretation of its own orders." *Southworth v. Bd. of Regents of Univ. of Wisconsin Sys.*, 376 F.3d 757, 766 (7th Cir. 2004).

The Commission did not violate any unambiguous command from the district court. The district court explained that the freeze and turnover order did not cover the Commission's transfer of the bond funds because the bond's existence was a regulatory matter—a cost of doing business under state law.[1] The Commission's willingness to return the bond once ALCO made good on the judgments against it

---

[1] 28 U.S.C. § 959(b) requires that property under receivership be operated in accordance with state law.

confirmed the regulatory nature of the bond. The district court did not understand its order to interfere with this state law procedure; nor do we.

Even if we were to set aside this regulatory distinction, it would be far from clear that the Commission violated the freeze order. When the order was issued, the bond was in the hands of Bank of America, and the Railroad Commission had an independent letter of credit from the bank. The Commission argues that letters of credit payable to third parties are not receivership property even if they are supported by receivership property, and Bradley has not clearly shown otherwise. In addition, the court lifted part of the freeze order to allow ALCO to operate the oil leases, which may have extricated the bond from the order even if the bond had initially been subject to it.

To the extent that Bradley argues that the district court abused its discretion by failing to order turnover of the bond via its equitable powers, that argument fails as well. The district court has broad equitable power to supervise a receivership such as this one, so "appellate scrutiny is narrow"; we review the decision below for abuse of discretion. *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 332–33 (7th Cir. 2010). The district court suggested a number of factors that shifted the balance of equities in the Commission's favor: the valid legal grounds for taking the bond, the state law obstacles to extracting a refund from the state treasury, the Commission's willingness to work with Bradley to refund the bond upon reimbursement, and the more than half a million dollars spent by the Commission to remediate the damage caused by ALCO's operation of the leases. While some other factors may have favored Bradley, he has not come close to showing that the court abused its broad power by siding with the Commission.

AFFIRMED.